UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
NORA PRELVUKAJ,                       :

                                     :           **MEMORANDUM AND ORDER**

                 Plaintiff,     :

                                       :           19-CV-05939 (RPK) (PK)

           -against-         :

                                       :

MARK JOSEPH NASELLI, VOLPE      :
DEDICATED INC., and RITE AID HDQTRS  :
CORP.,                                 :

                                       :

                     Defendants.   :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

        Nora Prelvukaj ("Prelvukaj" or "Plaintiff") brought this action against Defendants Mark Joseph Naselli ("Naselli"), Volpe Dedicated Inc. ("Volpe"), and Rite Aid HDQTRS Corp. ("Rite Aid") (collectively, "Defendants"), alleging that Naselli negligently operated a tractor-trailer, striking a vehicle driven by Prelvukaj and causing her injuries, and that Volpe and Rite Aid, as Naselli's employer and owners of the truck, have vicarious liability.  She also alleges that Naselli and Volpe were grossly negligent in permitting Naselli to drive more than the maximum number of hours permitted under 49 C.F.R. § 395, impairing his ability to drive safely.  (*See* Second Am. Compl., Dkt. 40.)

        This discovery dispute arises from Plaintiff's allegations that Defendants spoliated evidence relevant to her claims.  Specifically, Plaintiff argues that Defendants were obligated to preserve three types of evidence and failed to do so: (1) "SmartDrive" tractor-trailer video and data, (2) Naselli's hours-of-service logs, and (3) bills of lading for shipments transported by Naselli on the day of the incident.  (Affirmation of Jason Linden in Support of the Motion, "Linden Aff.," ¶¶ 16-21, Dkt. 83.) Plaintiff has moved for spoliation sanctions against Defendants pursuant to Rules 26(b) and 37(c) and (e) of the Federal Rules of Civil Procedure (the "Motion," Dkt. 83), asking the Court to (1) preclude

Defendants from offering testimony from experts in the field of accident reconstruction and biomechanical engineering, (2) preclude Defendants from arguing that the forces involved in the incident were insufficient to cause Plaintiff's injuries, and (3) permit an adverse inference instruction regarding the hours-of-service logs and bills of lading. (Motion at 1; Plaintiff's Memorandum of Law ("Pl. Mem."), Ex. 1 to the Motion at 1, 14, Dkt. 83-1.) For the reasons below, the Motion is granted in part and denied in part.

## BACKGROUND

### I.      Factual Background

Plaintiff alleges that on October 8, 2017, while driving a Toyota Corolla on the Staten Island Expressway, she was struck by a tractor-trailer operated by Naselli. (Linden Aff. ¶ 3; Deposition Transcript of Nora Prelvukaj ("Prelvukaj Dep. Tr."), Ex. 12 to the Motion 49:11-14, Dkt. 83-14.) According to Plaintiff, the tractor-trailer approached her vehicle from behind in the right lane, switched to the middle lane, tailgated a car there, and then switched back to the right lane without warning, striking Plaintiff's vehicle. (Linden Aff. ¶ 3.) The crash pushed Plaintiff's vehicle out of the lane of travel, causing serious injuries to Plaintiff's spine and substantial damage to her car. (*Id.* ¶¶ 4, 7.) Plaintiff called 911 as soon as her car stopped, at approximately 12:52 a.m., and reported being struck by a Rite Aid truck. (Linden Aff. ¶ 6; New York City Police Department 911 Call Report, Ex. 1 to Plaintiff's Reply at 1, Dkt. 87-1.)

Naselli contends that his vehicle did not come into contact with Plaintiff's vehicle. (Deposition Transcript of Mark Naselli ("Naselli Dep. Tr."), Ex. 7 to Motion 95:4-5, Dkt. 83-8.) He did not see or feel any impact (*id.* 94:3-5, 95:7-8) and pulled over only when an uninvolved driver flagged him down and told him he had hit a vehicle a few miles back. (*Id.* 97:10-22.) A police officer arrived at the scene, spoke to Naselli and Plaintiff, and created a police report. (Deposition Transcript

of Officer Daniel Sanchez, Ex. 10 to Motion 13:20-23:2, Dkt. 83-12; *see* Police Accident Report, Ex. 1 to the Motion, Dkt. 83-2.)

The tractor was owned by Volpe, Naselli's employer, and the trailer was leased by Rite Aid, which contracted with Volpe to provide trucking services between Rite Aid's Philadelphia distribution center and the New York metropolitan area. (Deposition Transcript of Daniel Loudermilk ("Loudermilk Dep. Tr."), Ex. N to Defendants' Affirmation in Opposition to the Motion ("Def. Opp.") 19:14-20:12, Dkt. 85-15; Deposition Transcript of Gregory Peck ("Peck Dep. Tr."), Ex. 8 to the Motion 13:13-15, Dkt. 83-10.)

Naselli called his dispatcher at approximately 1:00 a.m. to report what had happened, and later returned the vehicle to the Volpe facility in Fairless Hills, Pennsylvania. (Naselli Dep. Tr. 99:16-21; Deposition Transcript of Kenneth Gray ("Gray Dep. Tr.") Ex. 8[1] to the Motion 186:9-12, Dkt. 83-9.)

On October 9, 2017, Volpe conducted an investigation and prepared an incident report. (*See* Incident Report and Driver Statement, Ex. 2 to the Motion, Dkt. 83-3.) Volpe's Safety Director Kenneth Gray, terminal manager Gregory Peck and shop steward Ray Conway performed a physical inspection of the truck and took photographs. (Gray Dep. Tr. 172:13-20, 190:18-24; Peck Dep. Tr. 69:17-22.) They did not see any evidence that the tractor-trailer had been in contact with another vehicle. (Peck Dep. Tr. 69:23-25.)

As part of its investigation, Volpe also reviewed video from Naselli's vehicle, captured through SmartDrive, an on-board technology that records and collects data while the tractor-trailer is in operation. (Gray Dep. Tr. 177:18-178:15; Linden Aff. ¶ 16.) This data includes video of the tractor's front view of the road and the interior cabin as well as "the speed of the tractor, the GPS location of the tractor, whether the driver had their hands on the steering wheel, whether the driver was smoking

---

[1] In the Affirmation of Jason Linden in Support of the Motion, both the Deposition Transcript of Gregory Peck (Dkt. 83-10) and the Deposition Transcript of Kenneth Gray (Dkt. 83-9) are labelled "Exhibit 8." (Linden Aff. at 3, ¶ 7.)

or eating, the angle of the steering wheel, and the G-force associated with certain tractor movements." (Linden Aff. ¶ 16 (citing Gray Dep. Tr. 157:5-158:8, 184:12-185:2).)  The front-facing video shows a view extending about 20-30 feet in front of the tractor but does not provide a view to the side of the tractor.  (Gray Dep. Tr. 179:15-25.)

When triggered by a G-force change, SmartDrive automatically sends an email with a video clip to the operations manager of Volpe's Fairless Hills terminal.  (Peck Dep. Tr. 61:10-16, 13:13-15.) Volpe's business practice was to review any SmartDrive data sent to it in this manner, and, if Volpe determined that the accident was preventable, to preserve the SmartDrive data on disc in an investigative file.  (Gray Dep. Tr. 103:13-18, 107:3-10.)  Volpe can access the SmartDrive server and save a video by copying it into a computer.  (Gray Dep. Tr. 77:21-78:11.)  SmartDrive data is automatically deleted if it is not downloaded within 30 days.  (Gray Dep. Tr. 19:25-20:3, 77:12-20.)

At the time of the alleged incident, no automatic email was generated by Naselli's tractor-trailer.  (Peck Dep. Tr. 61:14-16.)  Thus, Volpe contacted SmartDrive to request the video, which Gray and Peck reviewed that same day; Naselli reviewed it separately at the Fairless Hills location. (Affidavit of Kenneth Gray ("Gray Aff.") ¶ 4, Dkt. 85-17; Gray Dep. Tr. 178:10-15, 279:2-4.)  Based on their review of the video, as well as an inspection of the tractor-trailer, Volpe determined that no contact had occurred between Plaintiff's and Naselli's vehicles.  (Gray Dep. Tr. 190:18-191:13, 192:5-10.)  Volpe did not preserve the SmartDrive video in the investigative folder and also did not take any steps to prevent the SmartDrive video from being automatically deleted.  (Gray Dep. Tr. 184:8-185:2.)

Volpe contacted its insurance carrier about the incident on October 9, 2017.  (Gray Dep. Tr. 172:22-173:3.)  In letters dated October 11, 2017, Plaintiff's counsel advised Rite Aid and Volpe that his firm was representing Plaintiff "for all claims resulting from injuries and/or damages as a result of your negligence" related to the accident on October 8, 2017 on the Staten Island Expressway.  (Linden Aff. ¶ 27; Letters from Pl.'s Counsel, Ex. 4 to the Motion, Dkt. 83-5.)  On October 16, 2017, Volpe's

insurance carrier requested that Plaintiff's counsel not file suit until they had an opportunity to resolve the case, and on October 24, 2017, it sent a letter to Plaintiff acknowledging Plaintiff's counsel's representation and attaching medical and wage loss authorization forms and settlement releases. (Linden Aff. ¶ 27; *see* Letter from Great West Casualty Company, Ex. 5 to the Motion, Dkt. 83-6.)

On July 1, 2019, Plaintiff filed suit in the New York State Supreme Court, County of New York. (Verified Complaint, Ex. A to the Notice of Removal, Dkt. 1-1.)   The case was removed to the Southern District of New York (Notice of Removal, Dkt. 1), and then transferred to this District on October 22, 2019.   The Second Amended Complaint was filed on October 22, 2020.

## II.    Discovery

On December 26, 2019, Plaintiff served Defendants with her initial discovery demands, requesting, *inter alia*, daily logs (Request 25), bills of lading (Request 26) and any on board data from Naselli's vehicle (Request 33).  (Ex. 21 to the Motion, Dkt 83-22; Linden Aff. ¶ 30.)  On September 21, 2020, Defendants informed Plaintiff that they were not in possession of those items.  (Linden Aff. ¶ 30; Ex. 23 to the Motion ¶¶ 1, 4, 5, 7, Dkt. 83-24.)

Naselli was required to record the number of hours he spent driving.   49 C.F.R. § 395.8. Private motor carrier drivers may not drive for more than 11 cumulative hours in a shift.  49 C.F.R. § 395.3.  Because the tractor driven by Naselli did not contain a working electronic device for logging his driving hours, Naselli recorded and maintained his hours-of-service manually in paper format. (Gray Dep. Tr. 63:22-64:3.)  The logs for the relevant time period were stored in the Volpe office located in Rite Aid's Fairless Hills warehouse; however, when the warehouse was shut down in approximately December 2019, "Rite Aid cleaned out everything and threw everything away."  (Gray Dep. Tr. 17:14-18:5, 19:12-14; Peck Dep. Tr. 19:3-8.)

Naselli's timesheet for the date of the incident shows that he clocked in at 1:15 p.m. on October 7, 2017 and clocked out at 4:10 a.m. on October 8, 2017, a shift of 14.42 hours. (Naselli Timesheet, Ex. G to Def. Opp., Dkt. 85-8.)

A bill of lading would include information about the locations of deliveries and the time a driver was at those locations. (Gray Dep. Tr. 126:15-25.) Plaintiff alleges that Volpe is required to keep bills of lading "[i]n accordance with the CFR." (Linden Aff. ¶ 21.) However, when a driver's assignment was only to pick up "totes," *i.e.*, empty plastic containers, from Rite Aid locations, no bills of lading would be generated; instead, there would be a manifest or inventory control document that recorded the stores the driver went to and the number of totes picked up. (Naselli Dep. Tr. 68:14-69:12; 74:8-10; Peck Dep. Tr. 35:20-36:7.) Naselli was assigned to pick up totes on the day of the alleged incident (Naselli Dep. Tr. 68:8-10); thus, no bills of lading exist, only manifests. The manifests from Naselli's trip were housed in Volpe's office in the Rite Aid building and discarded along with other documents when the facility closed in 2019. (Gray Dep. Tr. 20:25-21:19.)

After the Motion was filed, Plaintiff was granted leave to subpoena SmartDrive to ascertain whether it retained any "video footage or data" related to Volpe's truck on the date of the incident. SmartDrive responded with a declaration by its custodian of records, under penalty of perjury, that SmartDrive conducted a diligent search and "no responsive records were found." (Second Declaration of Mark Freitas ("Second Freitas Decl."), Ex. 1 to Plaintiff's Second Supplemental Submission in Support for Motion for Sanctions Response to Subpoena, Dkt. 111-1.)

## III. Defendants' Experts

Defendants retained two experts, who reviewed the deposition transcripts, police report, and photographs. The accident reconstruction expert Robert Lynch concluded that, while Plaintiff came into contact with *a* commercial vehicle, causing damage to her vehicle, "there is no physical evidence

to establish" that her vehicle came in contact with *Naselli's* vehicle.  (Report of Robert Lynch ("Lynch Report"), Ex. 28 to the Motion at 10 (all references to ECF pagination), Dkt. 83-29.)

Defendants' biomechanical engineer Alfred Bowles concluded that "[t]he described vehicle contact event did not create forces, movements, or accelerations that would be expected to cause lumbar spine skeletal injury." (*See* Report of Alfred Bowles ("Bowles Report"), Ex. 29 to the Motion at 11 (all references to ECF pagination), Dkt. 83-30.)  In addition to the photographs, police report and deposition transcripts, he also reviewed medical records and relied partially on conclusions about acceleration and impact force drawn from the Lynch Report.

Neither expert reviewed the SmartDrive video or data, although Lynch was aware of and read the testimony about the SmartDrive video in the Gray and Peck deposition transcripts.  (Lynch Report at 7-8.)

## DISCUSSION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999).  Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, when a party fails to obey a discovery order, the court may impose sanctions including, but not limited to, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. Pro. 37(b)(2).  "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-107 (2d Cir. 2002).  "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has

wide discretion in sanctioning a party for discovery abuses, and for the spoliation of evidence." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citations omitted).

Rule 37(e) of the Federal Rules of Civil Procedure, as amended in 2015, governs the imposition of sanctions when electronically stored information ("ESI") is spoliated.

## I.   Tangible Evidence

### A.   *Legal Standard for Spoliation of Tangible Evidence*

The party bringing a motion for spoliation sanctions must show that (1) the party with control of the evidence had an obligation to preserve it at the time it was lost or destroyed; (2) that the party with control of the evidence had a "culpable state of mind" when the evidence was lost or destroyed, and (3) the lost or destroyed evidence was relevant to the moving party's claims or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107 (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d. Cir. 2001)).

#### 1.   <u>Duty to Preserve</u>

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citing *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998) (the obligation arises "most commonly when suit has already been filed [...] but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation")).

When the obligation to preserve is triggered, the party must "do more than refrain from intentionally destroying relevant evidence; the litigant must also 'take affirmative steps to prevent inadvertent spoliation.'" *Skyline Steel, LLC v. PilePro, LLC*, 101 F.Supp.3d 394, 408 (S.D.N.Y. 2015) (citing *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010)). When a party has a routine document retention and destruction policy, "it must suspend it[...] and put in place a 'litigation hold' to ensure

the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

### 2. State of Mind

The loss or destruction of evidence "occur[s] along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality." *Reilly*, 181 F.3d at 267 (citation and internal quotation marks omitted). For tangible evidence, "[t]he 'culpable state of mind' factor may be satisfied by a showing of bad faith, gross negligence, knowledge, or negligence." *Slovin v. Target Corp.*, No. 12-CV-863 (HB), 2013 WL 840865 at *4 (S.D.N.Y. Mar. 7, 2013) (citing *Residential Funding Corp.*, 306 F.3d at 108); *see also Zubulake,* 220 F.R.D. at 220 (a "culpable state of mind" for purposes of a spoliation inference includes ordinary negligence); *Residential Funding Corp.*, 306 F.3d at 108 ("[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or negligently'") (citing *Byrnie*, 243 F.3d at 109) (emphasis and alterations omitted). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220. It is not necessary to find bad faith or intentional misconduct to impose sanctions for spoliation. *Reilly*, 181 F.3d at 268.

### 3. Relevance

The lost or destroyed tangible evidence must be relevant. "[S]anctions [are not] warranted by a mere showing that a party's preservation efforts were inadequate. . .if no relevant information is lost." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010). Relevant evidence is "something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."[2] *Residential Funding Corp.*, 306 F.3d at 108-09. The party seeking sanctions must show

---

[2] Rule 401 defines "relevant evidence" as evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401 (emphasis in original).

"sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp.*, 306 F.3d at 109 (citing *Kronisch*, 150 F.3d at 128). "However, courts must take care not to 'hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence,'" because doing so would allow the party who destroyed evidence to profit from it. *Singh v. Penske Truck Leasing Co., L.P.*, No. 13-CV-1860 (VSB) (GWG), 2015 WL 802994, at *6 (S.D.N.Y. Feb. 26, 2015) (quoting *Kronisch*, 150 F.3d at 128) (alterations omitted).

### B. Analysis

Defendants had a duty to preserve relevant evidence as soon as they received notice of the alleged incident on October 8, 2017. Naselli informed Volpe of Plaintiff's allegation of the incident almost immediately after it occurred, calling his dispatcher from the side of the road while waiting for the police to respond to the alleged accident. (Naselli Dep. Tr. 99:16-21.) Courts in this Circuit have consistently found that the obligation to preserve arises when defendants are aware that an accident has occurred involving their premises or employees. *See, e.g., Quraishi v. Port Auth. of New York & New Jersey*, No. 13-CV-2706 (NRB), 2015 WL 3815011 (S.D.N.Y. June 18, 2015) (finding obligation to preserve began at the time of plaintiff's accident on defendant's premises); *Slovin*, 2013 WL 840865 at *3 (finding obligation to preserve began when plaintiff fell in defendant's store and was transported to a hospital by ambulance, and that a representation letter sent a week later by plaintiff's counsel was "simply icing on the cake"); *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830 (RJS), 2012 WL 760317, at *4 (S.D.N.Y. Mar. 6, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013) (finding obligation attached at the time of plaintiff's accident in defendant's store because, given that defendants "were aware of [p]laintiff's injury…[d]efendants could have reasonably anticipated that [p]laintiff would bring a lawsuit").

Volpe's own actions indicate that it knew of the allegations by the next day because, on October 9, 2017, it requested and reviewed the SmartDrive data and video from the time of the alleged incident. It also notified its insurance carrier. And certainly, by October 11, 2017, Volpe and Rite Aid were made aware that a claim of negligence against it was possible, when they each received a letter from Plaintiff's counsel stating the firm's representation of Plaintiff for all claims resulting from the incident. As Defendants themselves state, "it was clear that plaintiff intended to bring suit based on counsel's letter dated October 11, 2017." (Defendants' Memorandum in Opposition to the Motion ("Def. Opp. Mem.") at 16, Dkt. 85-1.) Defendants should have known that documents related to Naselli's driving on the day of the alleged incident would be relevant to litigation, and they were obligated to preserve them.

### 1. <u>Hours-of-Service Logs</u>

Defendants' failure to preserve the hours-of-service logs was, at minimum, negligent. Defendants contend that there was no "purposeful attempt" to destroy the hours-of-service logs, which were discarded when the facility where they were stored was closed. (Def. Opp. Mem. at 11.) However, the duty to preserve requires that litigants "take affirmative steps to prevent inadvertent spoliation." *Skyline Steel, LLC*, 101 F.Supp.3d at 408. Defendants acknowledge that they did not take any steps to preserve the documents stored at the Rite Aid warehouse. (Gray Dep. Tr. 164:17-20.) The closure of the Volpe facility at the Fairless Hills warehouse was a decision made by Defendant Rite Aid, not a sudden or unforeseeable event outside of Defendants' control, such as a fire. *Zubulake*, 220 F.R.D. at 220. Defendants could have taken affirmative steps to preserve documents relevant to the ongoing litigation prior to the warehouse closure. Thus, Defendants fail to rebut the presumption of negligence that arises when evidence is destroyed after the duty to preserve attaches. *Id.*

The hours-of-service logs are relevant. Plaintiff alleges that Naselli was negligent in operating his truck in violation of the 11-hour rule set forth in 49 C.F.R. § 395.3. Logs indicating Naselli's time

spent on the road, including details of his route and stops, would tend to show whether Naselli was in violation of the rule such that he was fatigued or his ability to drive safely was impaired.  Even though Defendants contend that Naselli's timesheets provide sufficiently similar information (Def. Opp. Mem. at 7), the times when he clocked in and out do not precisely reflect when he was actually engaged in driving, as opposed to other employment activities.  (Gray Dep. Tr. 73:6-13.)  For example, by the time of the incident at 12:52 a.m., Naselli had already been on his shift since 1:15 p.m., that is, 11 hours and 37 minutes.  Only the hours-of-service logs would indicate whether he was driving continuously for that time or took breaks, and, if so, for how long.

Because all three factors have been met, I find that Defendants spoliated the hours-of-service logs.

### 2.  Bills of Lading

Defendants similarly had a duty to preserve any bills of lading that would show the times Naselli made deliveries.  However, it is undisputed that Naselli did a "tote run" on the day in question, only picking up empty containers rather than making deliveries.  Therefore, no bills of lading were created.[3]  (Def. Opp. Mem. at 17; Peck Dep. Tr. 35:20-36:7.)  Documents that never existed cannot be spoliated.

The manifests that were created, showing the stores Naselli went to and the number of totes he picked up, were discarded when the Rite Aid warehouse location closed.  However, because those records do not contain the *times* of Naselli's stops—the only information relevant to Plaintiff's claim that he was driving excessively long hours or was likely fatigued—those documents are not relevant. (Peck Dep. Tr. 35:20-26:4.)  Accordingly, I find that there was no spoliation when the manifests were destroyed.

---

[3] Gray originally testified that bills of lading existed for Naselli's trip, but, upon further questioning, he stated that he was not aware that Naselli did a "tote run" that day and therefore no bills of lading were created.  (Gray Dep. Tr. 20:20-24, 127:2-9, 165:2-5, 166:9-13.)

**3.  The Appropriate Sanctions for Spoliation of the Hours-of-Service Logs**

District courts have "broad discretion" to decide the proper sanction for spoliation, but "[t]he sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779 (citations omitted).

Plaintiff requests an adverse inference instruction regarding the spoliated hours-of-service logs.

Defendants argue that any spoliation sanction is inappropriate because there is no evidence that the logs would have been unfavorable to them.  They argue that the available evidence shows that Naselli did not exceed the 11-hour driving limit, because Volpe never issued Naselli a violation for exceeding the hour limit.  (Def. Opp. Mem. at 16-17.)

An adverse inference instruction for tangible evidence "should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference [...i]t makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently." *Residential Funding Corp.*, 306 F.3d at 108; *see also Pegasus Aviation, Inc. v. Varig Logistica S.A.*, 26 N.Y.3d 543, 554 (2015) (adverse inference charge appropriate even where evidence negligently destroyed); *but see Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991) (declining to impose adverse inference sanction where "no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator" and stating that "where the destruction was negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence.")

Based on the timesheet showing that Naselli clocked in at 1:15 pm, he had already been working for 11 hours and 27 minutes by the time of the alleged incident at 12:42 am.  Without the hours-of-service logs, Plaintiff has been disadvantaged in her ability to refute Defendants' argument that Naselli had been driving fewer than eleven hours at the time of the alleged accident.

In order to correct this evidentiary imbalance which Defendants created, it is appropriate that an instruction be given at trial to permit an adverse inference that had the hours-of-service logs been produced, they would indicate that Naselli drove more than eleven hours by the time of the alleged accident.

Accordingly, the Court imposes a sanction of an adverse inference instruction as to the hours-of-service logs.

## II.    ESI

### A.  Legal Standard for Spoliation of ESI

Rule 37(e) permits the court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery…" Fed. R. Civ. P. 37(e).  The "threshold requirements" of Rule 37(e) are thus that the party in possession of the ESI (1) had a duty to preserve the ESI, (2) failed to take reasonable steps to preserve the ESI, and (3) the ESI cannot be restored or replaced.  *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016).

Fed. R. Civ. Pro 37(e) incorporates the "longstanding common law duty" to preserve evidence "when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 WL 1434051, at *7 (E.D.N.Y. Mar. 30, 2019) (quoting *Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 360 (E.D.N.Y. 2014)) (alteration in original); *see also* Fed. R. Civ. Pro 37(e) advisory committee's

note to 2015 amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve.").

When the duty to preserve ESI attaches, the party must take reasonable steps to preserve it. "Where a party fails to timely institute 'a formal litigation hold and ... otherwise informally preserve ESI,' the Court can conclude that it did not undertake reasonable steps to preserve ESI." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y., 2020) (quoting *Capricorn Mgmt. Sys., Inc. v. Government Employees Insurance Co.*, 2019 WL 5694256, at *10 (E.D.N.Y., 2019)).

The movant has the burden to establish that ESI cannot be restored or replaced. *See, e.g., Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021). "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. Rule 37(e) advisory committee's note to 2015 amendment. If the lost ESI can be replaced, there is no harm and no sanction may be imposed.

### B. Analysis

As discussed *supra*, Defendants should have been aware on October 8, 2017, the date of the incident—and certainly by October 11, 2017 when they were notified of impending litigation—that evidence related to the alleged traffic incident would be relevant to future litigation. SmartDrive video and data from Naselli's vehicle at the time of the incident are unquestionably relevant to that litigation. Defendants thus had a duty to preserve the SmartDrive video and data.

Defendants accessed and reviewed the video on October 9, 2017, but they did not preserve a copy in Volpe's investigation folder. They did not request a new copy from SmartDrive at any time although they knew that the video and data were scheduled to be deleted pursuant to the 30-day retention period. They also did not ask SmartDrive to suspend its routine data destruction policy to

preserve the video and data.   Thus, Defendants failed to take reasonable steps to ensure the preservation of the SmartDrive video and data.

SmartDrive subsequently confirmed that it did not retain the video and data from the date of the incident.[4]   (Second Freitas Decl.)   Defendants have not suggested any other sources from which the lost video or data could be restored or replaced.   Therefore, I find that the SmartDrive video and data "cannot be restored or replaced through additional discovery."   Fed. R. Civ. P. 37(e)(1).   *C.f. Stovall v. Brykan Legends, LLC*, No. 17-2412 (JWL), 2019 WL 480559 (D. Kan. Feb. 7, 2019) (concluding that plaintiff did not show that lost surveillance video could not be restored or replaced where plaintiff had not issued a subpoena to third-party who had been in possession of a copy of the video).

Because all requirements of Rule 37(e) have been met, I find that Defendants spoliated the SmartDrive video and data.

## C.   The Appropriate Sanctions for Spoliation of the SmartDrive Video and Data

After the threshold requirements have been met, Federal Rule of Civil Procedure 37(e) permits the court to consider the imposition of sanctions under two subsections.   Under Rule 37(e)(1), when a failure to preserve ESI results in prejudice to another party, the Court "may order measures no greater than necessary to cure the prejudice."   Fed. R. Civ. P. 37(e)(1).   To demonstrate prejudice, a moving party need only make "plausible, concrete suggestions" as to what the lost evidence might have contained.   *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (finding prejudice where a lost event recorder "would have conclusively determined" whether a horn or bell

---

[4] Defendants objected to the Court's consideration of The Second Freitas Declaration submitted by SmartDrive in response to Plaintiff's subpoena on the basis that Plaintiff's subpoena did not request testimony, the sworn statement is "highly prejudicial" to Defendants without an opportunity to depose Freitas, and the deletion of the phrase "as such records were likely purged in the normal course of business" from the first to the second declaration suggests communications between Plaintiff and Freitas.   (Def. Letter at 1-2 (ECF pagination), Dkt. 112.)   I find Defendants' objections without merit.

was sounded prior to train movement that injured plaintiff, and it was "plausible that the data from the event recorder would have supported [plaintiff's] case") (quoting *TLS Mgmt. and Marketing Servs. LLC v. Rodriguez-Toledo*, 2017 WL 1155743, at *1 (D.Puerto Rico, 2017)).  "It is sufficient if the existing evidence plausibly 'suggests' that the spoliated ESI could support the moving party's case." *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (quoting *Coan v. Dunne*, 602 B.R. 429, 439 (D. Conn., 2019)).

The "particularly harsh" sanctions permitted under Rule 37(e)(2) – an adverse inference instruction, dismissal, or entry of default judgment – may only be imposed after a finding that the party acted with "intent to deprive another party of the information's use in the litigation."  *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018); Fed. R. Civ. P. 37(e)(2).

Plaintiff explicitly declines to request an adverse inference instruction or default judgment, stating that "Plaintiff will forego the argument that the appropriate remedy is the striking of the Defendants' Answer" and "Sanctioning the Defendants with any lesser remedy such as an adverse inference without preclusion will lead to jury confusion."  (Pl. Mem. at 11, 13.)  Accordingly, I make no finding under Rule 37(e)(2) as to whether Defendants acted with intent to deprive Plaintiff of the use of the SmartDrive video and data, and consider only sanctions under Rule 37(e)(1).

Plaintiff argues that she has suffered "irreparable prejudice" because the lost "SmartDrive video and data is a critical piece of evidence that showed *at minimum* the circumstances surrounding the subject crash and the driver's behavior at that time."  (Pl. Mem. at 7 (emphasis in original).)  The data, which includes information about G-forces, speed, and GPS location at the time of the incident, could shed light on the issues of whether Naselli was driving erratically and the degree of impact his truck may have had with Plaintiff's vehicle, if any.  The video would be critical in resolving the central disputed fact of whether Naselli's vehicle made any contact with Plaintiff's car at all.  Defendants'

employees were the only ones who reviewed the video and they testified that it did not depict an impact between the two vehicles. However, Plaintiff and her passenger (*see* Deposition Transcript of Melissa Ariyawansa, Ex. 13 to the Motion 32:17-14:9, Dkt. 83-15) both testified that Naselli's truck did strike Plaintiff's car, and that it did so in a particular way. Given the contradictory testimony, it is plausible that the SmartDrive video and data could have supported Plaintiff's case, by showing either the impact directly or the circumstances surrounding it. By depriving Plaintiff of the opportunity to see the video and determine for herself the degree to which the video might bolster or refute her allegations, Defendants prejudiced Plaintiff's ability to obtain potentially favorable evidence.

Rule 37(e)(1) permits a court to impose sanctions "no greater than necessary to cure the prejudice." The range of such measures is "quite broad." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Sanctions may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Id.*

Plaintiff requests that Defendants be precluded from presenting the testimony of their accident reconstruction and biomechanical engineering experts, including their conclusions that the forces involved in the incident were insufficient to cause Plaintiff's injuries.

I find that preclusion of Defendants' expert testimony and their argument about the forces involved in the incident is greater than necessary to cure the prejudice caused by the loss of the SmartDrive data and video. Although Defendants' experts reviewed the deposition testimony of witnesses, including Defendants' representatives who viewed the video, their conclusions were based primarily on the police report and photographs of the vehicles after the incident. The Lynch Report notes that Naselli's vehicle was equipped with SmartDrive technology and that Peck testified that he did not receive an email notification related to the alleged incident. (Lynch Report at 8.) The Bowles

Report notes that Naselli reviewed dash cam video the day after the alleged incident. (Bowles Report at 7.) However, neither expert reviewed the video or the data, and they did not have access to information that was denied to Plaintiff and her experts.

To the extent that Lynch and Bowles relied on testimony by Defendants' witnesses that they did not receive email notification that would be triggered by a collision with Naselli's vehicle or that they did not see any contact between the vehicles on the video, Plaintiff will have an opportunity to cross examine them and challenge the assumptions underpinning their conclusions. Plaintiff's experts reviewed the same information as Defendants' experts and have prepared reports that can be used to rebut the conclusions reached by Lynch and Bowles. (*See* Plaintiff's Expert Patrick Sundby's Rebuttal Report, Ex. 26 to the Motion, Dkt. 83-28.)

In addition, it would be appropriate for Plaintiff to be permitted to present evidence to the jury regarding Volpe's actions and inactions that resulted in the loss of the SmartDrive video and data. The jury may then consider the circumstances surrounding the loss of the SmartDrive video and data in evaluating witness testimony, including credibility, and reaching a verdict. The imposition of such a sanction cures the prejudice to Plaintiff by "provid[ing] the jury, as finder of fact, with context for that evidentiary imbalance," permitting the jury to assess the parties' credibility and make factual findings. *Karsch*, 2019 WL 2708125 at *27.

Presentation of evidence regarding the loss of evidence is permitted under Rule 37(e)(1) and distinguished from a mandatory or permissive adverse inference instruction, for which Rule 37(e)(2) requires a finding of intent to deprive a party of the evidence. *Doubleline Cap.,* 2021 WL 1191527 at *9. The appropriate instructions and the scope of the evidence to be presented at trial will be determined by the judge who presides over the trial. *See, e.g., Eur. v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 180 (S.D.N.Y. 2022) (permitting the movant, as a sanction under Rule 37(e)(1), to present evidence that the opposing party lost ESI; but leaving the specific jury instruction to the trial judge,

who "will be in the best position to instruct the parties on the introduction of evidence and arguments that can be made and then determine the precise language of any necessary jury instruction consistent with this Order"); *Karsch*, 2019 WL 2708125 at *1 ("[B]ecause an unknown number of relevant and potentially significant documents have been permanently placed out of defendants' reach, defendants will be permitted to present evidence, at trial, concerning the destruction of the [documents], and the jury will be instructed that it may consider that evidence in evaluating the parties' credibility and determining the facts in this case"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474 (S.D.N.Y. 2022) ("Plaintiffs will be permitted to present evidence to the jury concerning [defendants' failure to preserve ESI], and the jury will be permitted to consider that evidence, along with the other evidence in the case, in evaluating [p]laintiffs' claims and Keurig's defenses in their deliberations"); *Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205, 225 (S.D.N.Y. 2021) ("Defendants' inability to review [p]laintiff's deleted job rejection notices can be addressed by allowing [d]efendants to present evidence at trial that Plaintiff deleted the notices").

## CONCLUSION

For the foregoing reasons, the Motion is granted in part and denied in part, and sanctions are imposed in the form of an adverse inference instruction regarding the hours-of-service logs and presentation of evidence at trial regarding the loss of the SmartDrive video and data.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:     Brooklyn, New York
                May 18, 2023